UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                               Case No. 22-CV-989

APPROXIMATELY 32,133.63 TETHER (USDT)
CRYPTOCURRENCY FROM BINANCE
ACCOUNT NUMBER ENDING IN 8770,

        Defendant.

## MEMORANDUM REGADING CIVIL FORFEITURE IN REM

      The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Bridget J. Schoenborn, Assistant United States Attorney for this district, submits this Memorandum Regarding Civil Forfeiture. For the reasons set forth herein, the government respectfully asserts that the defendant property is subject to forfeiture because it constitutes wire fraud proceeds and was involved in money laundering transactions.

### I.      BACKGROUND

      By order dated January 30, 2023, the Court denied the government's motion for default judgment without prejudice for failure to trace the property to wire fraud activities. The Court directed the United States to remedy this deficiency by filing an amended complaint. The government filed an amended complaint today, March 24, 2023. (Doc. 17). As set forth in the amended complaint, the 32,133.63 Tether from Binance account ending 8770 constitutes wire

fraud proceeds and was involved in money laundering transactions.  Accordingly, the property is forfeitable by the United States.

## II.     ANALYSIS

Under 18 U.S.C. § 981(a)(1)(C), with cross references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), the United States may civilly forfeit "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343.  Under 18 U.S.C. § 981(a)(1)(A), the United States is entitled to a broader measure of forfeiture for property involved in money laundering conduct, consisting of: "[a]ny property, real or personal, involved in a [money laundering] transaction in violation of [18 U.S.C. §§ 1956], or any property traceable to such property."

To obtain default judgment, the United States must not only a satisfy the procedural requirements of showing that it gave adequate notice of the complaint and that no one filed a timely claim but also make a substantive showing that the complaint states a facially valid claim for forfeitability. Typically, courts demanding such a substantive showing on default judgment require the government to show that the complaint satisfies the civil forfeiture complaint-pleading standard set forth in Supplemental Rule G(2)(f)—namely, that the complaint alleges sufficiently detailed facts to support a reasonable belief that government will be able to meet its burden of proof at trial.  *See, e.g., United States v. $1,071,251.44 (Mingzheng Int'l Trading Ltd.)*, 324 F. Supp. 3d 38 (D.D.C. 2018) (holding that "a notation of default against a defendant does not automatically entitle a plaintiff to a default judgment; instead, the defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief."). This holding is consistent with the general trend that federal courts will not enter default judgment unless the complaint states a facially valid claim for relief.  *E.g., City of New*

*York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 n.23 (2d Cir. 2011) (collecting cases First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits for the proposition that most circuits "appear to have held expressly that a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief")). Thus, "conceptually, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *$1,071,251.44* (*Mingzheng Int'l Trading Ltd.*), 324 F. Supp. 3d 38, 45. And, to be sure, many courts have held that the United States need not demonstrate tracing in order to satisfy Rule G(2)(f) and survive a motion to dismiss a civil forfeiture complaint. *See, e.g., United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015) ("Tracing is not an issue at the motion to dismiss stage," so whether the Government will ultimately be successful in tracing all or only some of the defendant property to the underlying violation is irrelevant; "the Government is not required to prove its case simply to get in the courthouse door").

But even assuming that the government must plead more detailed facts—and "show its tracing math"—to obtain default judgment than it must show to survive a motion to dismiss, the government has done that here. The United States has shown that underlying wire fraud and subsequent money laundering conduct occurred, and that the defendant seized cryptocurrency has a sufficient nexus to those offenses to make all the defendant cryptocurrency subject to forfeiture.

Specifically, the United States has shown that the defendant seized cryptocurrency constituted wire fraud proceeds or property traceable to such proceeds. Between May 26 and May 28, 2022, A.D. provided $30,200 in U.S. currency in gift cards and Bitcoin to and individual falsely claiming that there was a warrant for A.D.'s arrest. *See* Exhibit A. A.D. communicated with the fraudster via phone number 1-xxx-750-7445. A.D. took directions from

the fraudster about how to obtain $15,000 Bitcoin at this number and texted $15,200 in gift cards to this number. The $15,000 Bitcoin is directly traceable to the defendant property (Binance 8770). The totality of the circumstances indicates that the $15,200 is also traceable to the defendant property – it is roughly half the balance of that account, it was sent approximately two days before the $15,000 Bitcoin, and it was sent to 1-xxx-750-7445, where directions about the $15,000 transaction also came from.

However, even if the Court found that only $15,000 is directly traceable, the remainder of the moeny was involved in money laundering conduct by virtue of having been commingled in the Binance account with known proceeds of the fraud scheme—very probably in an effort to launder the fraud proceeds through the listed Binance account as part of series of concealment money laundering transactions. *See* 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), 982(a)(1), and (b)(1), and 28 U.S.C. § 2461(c).

Under a money laundering theory of forfeiture, the government is not limited to forfeiting only the criminal proceeds involved in the money laundering transactions. Rather, the government may also forfeit presumably clean funds involved in the money laundering transactions where those clean funds were part of the "subject matter" of the laundering transaction or where those presumably clean funds facilitated the money laundering transactions.

To be sure, even if financial transaction is simply a transfer of a commingled sum of money from Account A to Account B, if that transaction constituted a money laundering transaction, then the entire sum is forfeitable as the subject matter of a money laundering offense. *See United States v. Huber*, 404 F.3d 1047, 1058-59 (8th Cir. 2005) (the SUA proceeds involved in a financial transaction, as well as any clean money commingled with it, constitute the corpus of the money laundering transaction; both are subject to forfeiture); *United States v.*

*Funds on Deposit at Bank One, Indiana*, 2010 WL 909091, *8 (N.D. Ind. Mar. 9, 2010) (following *Huber*; when defendant commingled drug proceeds with other funds in a bank account, and transferred the commingled funds to another account, and commingled them yet again before making a third transfer, all of the funds involved in the last transfer were forfeitable as property involved in violations of Sections 1956 and 1957).

Moreover, clean funds in a bank account (or here, a crypto wallet) that otherwise facilitate the money laundering conduct—by, for example, helping conceal the nature, source, ownership, or control of the cryptocurrency traceable to fraud proceeds—can likewise be subject to forfeiture as "involved in" the money laundering conduct in that way. For example, individuals engaged in fraud sometimes move proceeds of criminal activity through multiple financial accounts, sometimes at a rapid pace, and often with no discernable legitimate purpose. Such convoluted transactions that serve no apparent legitimate purpose can imply that the purpose of these convoluted transactions was to conceal the nature, source, location, ownership and control of the proceeds. *See, e.g., United States v. Rodriguez*, 53 F.3d 1439, 1447-48 (7th Cir. 1995) (convoluted real estate transactions, from which intent to conceal or disguise may be inferred, also imply knowledge of illegal source; jury could infer knowledge from combination of suspicion and indifference to the truth).

The blockchain analysis in this case demonstrates such conduct. Specifically, that analysis shows the movement of the victim's money, mostly on the same day (May 31, 2022), broken up and distributed through a series of cryptocurrency wallets, including the bc1q4 account, the bc1qy account, the 1NoBq account, and the Binance 8770 account without any apparent legitimate economic purpose. *See* Exhibit A.

Where someone so commingles fraud proceeds with presumably clean funds in a bank account (or here, a cryptocurrency account or wallet), all funds in the account or wallet are subject to forfeiture where all those funds were involved in apparent concealment money laundering conduct. *See, e.g., United States v. Guerrero*, 2021 WL 2550154, *9 (N.D. Ill. June 22, 2021) (money from unknown source that was commingled with fraud proceeds facilitated the concealment laundering of the fraud proceeds and, accordingly, property acquired with the commingled funds was forfeitable as property traceable to property involved in a money laundering offense); *United States v. Romano*, 2021 WL 1711633, *5-6 (E.D.N.Y. Apr. 29, 2021) (by laundering fraud proceeds through their personal bank accounts, to commingle the proceeds with other funds for a concealment laundering purpose, the defendants made the commingled funds forfeitable as facilitating property); *United States v. Coffman*, 859 F. Supp. 2d 871, 876-77 (E.D. Ky. 2012) (holding that forfeiture of legitimate and criminal proceeds commingled in an account is proper as long as the government demonstrates that the defendant pooled the funds to facilitate money laundering by, for example, disguising the nature and source of proceeds; concluding that clean funds in bank account were subject to forfeiture because they had "been co[m]mingled with tainted funds for the purpose of obfuscating the origin or existence of the tainted money").

## III.   CONCLUSION

For all the foregoing reasons, the 32,133.63 Tether from Binance account ending 8770 constitutes wire fraud proceeds and was involved in money laundering transactions. Accordingly, all of the defendant property is forfeitable to the United States.

Respectfully submitted at Milwaukee, Wisconsin, this 24th day of March 2023.

GREGORY J. HAANSTAD
United States Attorney

6

By:

         *s/ Bridget J. Schoenborn*
         BRIDGET J. SCHOENBORN
         Assistant United States Attorney
         United States Attorney's Office
         Wisconsin Bar No. 1053696
         517 E. Wisconsin Ave. Room 530
         Milwaukee, WI 53202
         414/297-1700; Fax 414/297-1738
         Bridget.Schoenborn@usdoj.gov